[No. 1719.]

# I. A. STROSNIDER, RĖSPONDENT, *v.* C. C. TURNER, APPELLANT.

1. APPEAL—RECORD—CONTENTS—JUDGMENT ROLL—STATUTORY PROVISIONS. Where the record contains duly certified copies of all papers required by statute to constitute the judgment roll, except the summons, and it does not disclose whether one was issued or not, but shows that the defendant appeared and answered, it was not defective, under Comp. Laws, 3431, requiring it to contain a copy of the judgment roll.

2. ELECTIONS—BALLOTS—INDICATION OF CHOICE—VOTER—DISTINGUISHING MARKS. Where a voter was required by law to mark his ballot by making a cross opposite the names of candidates voted for, and was furnished with a stamp for this purpose, but, either because the stamp was defective, or he used it improperly, he made only rectangular marks or blotches, the ballot was properly rejected as containing distinguishing marks.

3. DISTINGUISHING MARKS—APPLICATION OF STAMP. A voter was required by law to mark his ballot by making a cross opposite the names of candidates voted for, and furnished with a stamp for this purpose. He so applied the stamp that all or a portion of the rectangular outline of the stamp surrounding the cross was left upon the ballot, but not rendering the cross indistinguishable. The defect only appeared in what was probably the first mark made on the ballot, it being opposite the first name, and all the other crosses on the ballot were clear. *Held,* that the ballot was valid.

4. APPEAL—ASSIGNMENT OF ERROR—NECESSITY. In an action to contest an election where the rulings of the trial court in rejecting certain ballots as invalid were not assigned as error, the rulings were not before the court for consideration on appeal.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Lyon County; *Frank P. Langan,* Judge.

Action by I. A. Strosnider against C. C. Turner relative to the position of County Commissioner of Lyon County, Nevada. From a judgment for plaintiff, defendant appeals. **Reversed and remanded.**

The facts are sufficiently stated in the opinion.

*Alfred Chartz,* for Appellant.

*Mack & Shoup,* for Respondent:

I. Respondent objects to the supreme court hearing the appeal in this case for the reason that neither the judgment roll nor a certified copy of the judgment roll in the case is

annexed to the statement on appeal herein; nor does a copy of said judgment roll accompany said appeal in any manner. For this reason the appeal should be dismissed. (Comp. Laws, 3431; *Irwin* v. *Sampson*, 10 Nev. 282; *State* v. *Eberhart*, 6 Nev. 186.) We submit that the findings and judgment of the lower court were proper and supported in every particular by the evidence, and that no error prejudicial to contestee and appellant was committed on the hearing of contest in the court below.

By the Court, Norcross, J.:

Appellant and respondent were rival independent candidates for the office of County Commissioner of Lyon County for the short term, at the general election held on November 6, 1906. On the 12th day of November, 1906, the Board of County Commissioners of Lyon County met and canvassed the returns of all the voting precincts of Lyon County, excepting those from Churchill Precinct, and from such canvass found that the appellant, Turner, had received 277 votes, and respondent, Strosnider, had received 275 votes. Upon such canvass the commissioners directed that a certificate of election be issued to C. C. Turner for the office in question, and the same was so issued. The commissioners of Lyon County refused to canvass the returns of Churchill Precinct, for the reason that they had not been forwarded from the election precinct in the manner and to the person authorized by law. Respondent brought this action to contest the election of Turner, alleging irregularity upon the part of the board of county commissioners in refusing to canvass the returns from Churchill Precinct, and upon the part of the election officers of the various precincts in counting votes for appellant which should not have been counted, and in failing to count votes for respondent which should have been counted for him. The contest came on regularly for trial in the lower court, and that court admitted and counted the ballots of Churchill Precinct, as well as all the other precincts of the county, excepting nine ballots, which were rejected by the trial court as containing distinguishing marks. From the count made by the trial court it was found that the

respondent, Strosnider, had received 276, and appellant, Turner, had received 275, lawful ballots. The trial court thereupon decided that respondent was duly elected to the office in question, and judgment was entered accordingly. From this judgment, appeal is taken.

Counsel for respondent have embodied in their brief an objection to the consideration of the appeal upon the ground that the transcript on appeal does not contain a copy of the judgment roll, as required by Comp. Laws, 3431. The record contains duly certified copies of all papers required by statute to constitute the judgment roll, excepting the summons, provided a summons was issued and returned in the case. The record nowhere discloses whether a summons was or was not issued, and we know that defendants may, and sometimes do, appear and answer a cause of action without the formality of a summons. A summons may be issued and served, and if the defendant appear and answer, the purpose of the summons has been accomplished. If the sheriff, in such case, should neglect to file the summons with his certificate of service, or if the same should be lost, as sometimes happens, doubtless the clerk or the parties to the action would pay no attention to its omission, and the judgment roll would be made up without it. In the case of a default judgment, the summons, of course, would be an essential part of the judgment roll, and its omission might lead to serious results; but, in a case where parties defendant have appeared and answered, its omission from the judgment roll would ordinarily have no effect. So far as the consideration of any question presented upon this appeal is concerned, a summons, if issued, would be immaterial. In the absence of a showing that a summons was issued, we will not presume such fact in order to sustain a purely technical objection like that here presented.

Counsel for appellant has assigned as error numerous rulings of the trial court; but, in the view we take of this case, we need only consider those rulings in reference to the rejected ballots embodied in the record.

*Rejected Ballots Voted for Appellant:* Ballot marked "Contestant's Exhibit No. 11" does not contain a single cross

stamped upon it, but contains four rectangular marks or
blotches in the squares opposite the names of three different
candidates for office.   It is difficult to account for the making
of these marks, unless the stamp furnished the voter con-
tained a cross upon but one end, while the other end was
flat, and that the voter in stamping his ballot used the wrong
end of the stamp.   Either this was the case, or the voter
pressed so hard upon the ballot with the stamp that the cross
was obliterated or became an indistinguishable part of the
blotch that was left.   Whatever may have been the cause of
the marks or blotches produced, the voter must have seen in
each instance that he had not stamped a cross as the law
required.   It was his duty, under the circumstances, to return
the ballot to the election officers and get a new one, and, if the
stamp furnished was defective, to get a new stamp.   The trial
court did not err in rejecting this ballot.   In *Re Vote Marks*, 17
R. I. 812, 21 Atl. 962, cited by this court in *Dennis* v. *Caughlin*,
22 Nev. 455, 41 Pac. 769, 29 L. R. A. 731, 58 Am. St. Rep.
761, the Supreme Court of Rhode Island said: "A cross is
the only mark authorized by the statute to be used to desig-
nate the person voted for, and it is only by force of the
statute that it gets its significance for that purpose.   If
another mark be used, there is nothing to certify its mean-
ing.   It might be conjectured that it was used inadvertently
instead of a cross, but in our opinion such a conjecture would
not justify the counting of it.   The statute declares: 'No
voter shall place any mark upon his ballot by which it may
be afterwards identified as the one voted by him.'   If marks
other than crosses were counted, they might be used both to
answer the purpose of crosses and to identify the ballots."
Numerous authorities might be cited to the same general
effect.

Ballots marked "Contestant's Exhibit No. 9," "Contest-
ant's Exhibit No. 10," and "Contestant's Exhibit No. 12,"
are similar in so far as the objection made to them is con-
cerned.   Exhibits No. 9 and No. 12 each contain a cross
stamped in the square to the right of the name of George A.
Bartlett, candidate for member of congress, and Exhibit 10
contains a cross stamped in the square opposite the name of

Oscar J. Smith, candidate for member of congress. When
these crosses were stamped, all or a portion of the rectangular
outline of the stamp was left impressed upon the ballot sur-
rounding the cross. In each case, however, the cross can be
clearly and readily distinguished. It is manifest, we think,
that the faulty mark was made by the voter in each instance
bearing down a little too hard, considering the stamp fur-
nished. This defect only appears in what was probably the
first mark made on each ballot, as the names of the con-
gressional candidates are the first upon the ballot, and
naturally would receive first attention. All the other crosses
stamped upon the ballots are quite clear, excepting slight
defects due to the poor stamp furnished. These ballots, we
think, should have been counted for appellant. In each case
the voter stamped a cross with the instrument furnished by
the election officers for that purpose, and, while the first
impression made was defective, it was largely the fault of the
instrument, and cannot reasonably be placed in the class of
distinguishing marks. The defect may very properly be
considered as accidental, and hence of a class regarded by
the courts generally as not vitiating the ballot. (*State* v.
*Sadler*, 25 Nev. 179, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128,
83 Am. St. Rep. 573; *Dennis* v. *Caughlin*, 22 Nev. 456, 41
Pac. 768, 29 L. R. A. 731, 58 Am. St. Rep. 761.)

If the officials charged with the duty of providing the
stamps to be used at elections would be particular in the
selection of such stamps for the voter's use, all questions
like that here presented would be avoided. There should be
no difficulty in having stamps made so that it would be
nearly impossible for the voter to stamp anything but a clear
and well-defined cross.

The record contains five ballots rejected by the trial court
as containing distinguishing marks, which contain votes for
respondent. The rulings upon these ballots are not assigned
as error, and hence such rulings are not before the court for
consideration. (*Dennis* v. *Caughlin*, 22 Nev. 453, 41 Pac. 768,
29 L. R. A. 731, 58 Am. St. Rep. 761.)

The three ballots which we have held should be counted in
favor of appellant would give him a majority of two votes as

the count now stands, and necessitates a reversal of the case.

It is therefore ordered that the judgment be reversed, and the cause remanded for a new trial.