SYLVESTER WILCOX ET AL. v. SAN ANTONIO & ARANSAS PASS RAILWAY CO.

No. 948.

**1. Railway Company—Trespasser Riding on Engine Not a Passenger.**

The rules of a railway company prohibited third persons from riding on its engines, and its employes in charge had no authority to permit them so to do. W, while taking a free ride upon a switch engine, with the assent or knowledge of the employes in charge thereof, but knowing it to be an engine not intended for carrying passengers, was injured by a derailment of the engine. Held, that the company was not liable to him as a passenger for the injuries.

**2. Same—Contributory Negligence—Ordinary Care Towards Trespasser.**

One who, without authority from the railway company, rides upon the footboard of a switch engine not in good condition, and not used for carrying passengers, is guilty of contributory negligence which will preclude him from recovering for injuries resulting from the engineer running the engine at a dangerous rate of speed, whether such conduct of the engineer was only want of ordinary care, or was gross negligence, but without willful purpose to injure.

APPEAL from Harris. Tried below before Hon. S. H. BRASHEAR.

*Kittrell & Allen*, for appellant.—1. One riding on a railway engine or train, not a passenger thereon, may, notwithstanding, have some rights, and the company may owe him some duty; as where he is lawfully on an engine or train, not being a fellow-servant, and those in charge of such engine or train are guilty of gross negligence, and he is injured thereby. Cook v. Houston Direct Navigation Co., 76 Texas, 353; 2 Shear. & R. Neg. (4th ed.), sec. 489; 2 Wood Ry. Law, 1045; Whitehead v. Ry. Co., 11 S. W. Rep., 751 et seq.; Ry. Co. v. Watkins, 29 S. W. Rep., 233.

2. One may in law be a passenger, although riding without payment of fare, upon what may ordinarily be considered a switch engine, if the company uses such an engine to transport people, or if they are openly permitted to ride upon it without objection. Ry. v. Prince, 77 Texas, 560; Prince v. Ry., 64 Texas, 144.

*O. T. Holt*, for appellee.—The relation of passenger and common carrier was not created and did not exist between Harry Wilcox and the appellee, the San Antonio & Aransas Pass Railway Company. Ry. Co. v. Black, 87 Texas, 161; 49 Texas, 31 and 49; Berry v. Ry. Co., 25 S. W. Rep., 229; Hutchinson on Carriers, sec. 554, p. 632; Bishop on Non-Contract Law, sec. 619, p. 283; 149 Mass., 214; 96 Mo., 279; 57 N. Y., 382; 81 Ills., 245; 85 Ills., 80; 64 Ia., 48; 51 Conn.,

143; 25 Pac. Rep., 893; 4 La.; 32; 83 Ills., 427; 132 Penn. State, 1; 131 Ills., 61; 22 N. E. Rep., 812; 19 Ore., 354; 3 Mont., 90.

WILLIAMS, ASSOCIATE JUSTICE.—Appellant sued in his own behalf, as well as for the benefit of his minor son, Harry Wilcox, to recover damages for injuries suffered by the latter through alleged negligence of defendant. From a verdict and judgment in favor of defendant this appeal is taken. No question is made as to the joinder of the cause of action in behalf of the parent with that of the son. See Houston City Street Railway Co. v. Reichart, 87 Texas, 539.

Appellant claimed that when his son was hurt, he was riding upon an engine of appellee as a passenger, and sought to hold appellee responsible for a failure to observe the care required of it in the transportation of a passenger. He also asserted that, if his son was not a passenger, he was on the engine by invitation and with the knowledge and consent of those operating it, and was hurt as a consequence of their gross negligence in running it.

Both of these positions were controverted by defendant, and, in addition, the defenses that appellant was a trespasser on the engine and was guilty of contributory negligence were set up.

The engine in question was a switch engine which was used about the yard of appellee at Houston, and was unfit for road work. It could not be safely run faster than ten miles an hour, if in good condition, and there was evidence tending to show that it was not in good condition at the time of the accident. On the day when appellant was hurt, this engine was ordered out on the road some miles from Houston to bring in some cars which had been left there by another engine. Appellant was present at the depot when it was about to start, and states that the yard foreman, who had command of the crew who were to go with the engine to handle the cars, invited him to accompany them. The yard foreman denies this statement. There is evidence sufficient to show that appellant went upon the engine with the knowledge and acquiescence not only of this employe, but of the engineer and fireman. There rode in the cab and tender five or six persons, including the engineer and his wife and the fireman. Appellant, with a companion who was an employe of appellee, but it seems not one of the crew, and who also insisted on his going, rode upon the foot-board in front of the engine where the pilot usually is. The reason given by appellant for taking that station is that there was not room in the cab or tender. The engine was derailed before reaching the destination and several persons were killed and appellant was injured. The evidence warrants the conclusion that the engine was running forty or fifty miles an hour when it left the track. There is also evidence that the engineer was incompetent and reckless, addicted to excessive use of intoxicants, and that his sight was badly impaired. There is nothing to show that he was under the influence of liquor at the time, or that his imperfect vision had anything to do with the derailment of the engine. But the con-

clusion is warranted that, in running the engine at the rate of speed above stated, he was not only negligent, but reckless, and that the catastrophe was the consequence of his want of proper care. Appellant was nineteen years of age, of average intelligence, and was more than ordinarily conversant with the operation of railroads and the different kinds of engines, as most of his life had been spent around the depots and yards where such operations were carried on. He knew the difference between yard engines and road engines and the uses for which each was intended. He undoubtedly had sufficient capacity to understand the dangers of the situation in which he placed himself. The uncontradicted evidence showed that the yard master had nothing to do with the passenger traffic of appellee, and that neither he nor any of the persons connected with the engine had authority to permit appellant to ride on it. The rule of the company prohibited any person, except certain employes, from riding on locomotives and freight trains. There was evidence tending to show a pretty general disregard and relaxation of this rule as to freight trains, and the testimony showed that persons sometimes took free rides on locomotives, but, as to this, it was insufficient to show any carriage of passengers upon the latter, or any knowledge on the part of the officers of appellee of this disobedience of the rules. Appellant denied having any knowledge of the character of the engineer or of the alleged unfitness of the engine or of the existence of the rule. He admitted that he knew the switch engine was not used for carrying passengers, but said that he did not know that he had no right to ride on it if invited to do so. He had ridden on it before without permission.

The errors assigned relate to the giving and refusal of charges. The charge contains the following paragraph:

"The testimony showing, without contradiction, that at the time of getting on the engine, Harry Wilcox knew it was not used for carrying passengers, and that he had no right on it, the presumption is that he was there without legal authority, and to entitle plaintiffs to recover, the burden is on them to show that he was invited to go on the engine by some one having authority to so invite him, or by some one who, to his knowledge, had frequently exercised the right of allowing passengers to ride on the engine."

The objection urged is that the charge erroneously assumed, as uncontroverted, a fact which was in dispute; but we think the fact stated was shown by the uncontradicted evidence. Appellant admitted that he had no right to ride without invitation, and the charge gave him the right if invited by one having real or apparent authority. We are also of the opinion that the facts show conclusively that Wilcox was not a passenger, and the court could properly have so instructed. Railway Co. v. Black, 87 Texas, 161; Railway Co. v. Cooper, 32 S. W. Rep., 517; Cook v. Houston Direct Nav. Co., 76 Texas, 353.

Under the decisions, we hold that Wilcox could not, consistently with the evidence, have been treated by the jury as a passenger, and hence

there was no error in refusing special instructions which sought to have that phase of appellant's contention submitted to the jury. It is proper to say, however, that, by its general charge and by special instructions Nos. 7 and 8, given at request of appellee, the court did submit that question to the jury, giving them the rule applicable in cases where regulations prohibiting the carriage of passengers upon freight trains or locomotive engines were so openly disobeyed by employes as to give rise to the inference that they had been relaxed or waived by the company. So, the rules contended for by appellant, as to his right as a passenger, were substantially given. Our view of the case is that the transaction was not such as to make appellant a passenger, but that he was simply taking a free ride with the assent of the employes, with knowledge on both sides that he was not a passenger. But, under the charge of the court, had the jury found the facts by which appellant claims he is shown to have been a passenger, they must have returned a verdict in his favor. To have found as they did, the jury must have believed either that appellant was not invited to ride, or that the regulations were in full force, and the employes unauthorized to invite him. It does not follow that, because he was not a passenger, he had no rights whatever. There was the duty resting upon those operating the engine, if they knew of his presence, to avoid injuring him so far as by the exercise of ordinary care they could do so. A failure to exercise such care may be admitted to have been a breach of the duty which the circumstances imposed upon them; and, if he could escape the charge of contributory negligence, appellant might have a right to recover. But breach of duty on their part does not entitle him to recover unless he was free from negligence contributing to his own injury, and we do not see any escape from the conclusion that, by getting on the engine and exposing himself as he did, he was guilty of an act which an ordinarily prudent person would not have committed. That this contributed to his injury there can be no doubt. Nothing was done by the engineer except to run the engine recklessly, exposing himself, his wife, and all others on the locomotive to dangers which he should have avoided. He did no distinct act from which a willful purpose to injure appellant could be inferred. In cases where a trespasser is found on the train and expelled with the use of unnecessary violence, or by the manner of the expulsion is exposed to unnecessary danger, his wrongful act in getting on the train does not contribute to the excessive force or to the superadded danger, but it is a distinct wrong. Where a trespasser is discovered upon the track and his danger realized in time to prevent injury to him, the failure to exercise care to prevent the injury is a distinct wrong which becomes the proximate cause of the injury, and to that the mere negligence of the injured person in going on the track does not, in a legal sense, contribute. It is declared by our Supreme Court to be the duty of railway companies to exercise ordinary care in keeping a lookout to discover persons on their tracks and prevent injury to them, but a mere negligent failure to keep a lookout and to dis-

cover one who is at the time negligently on the track does not make the company liable. The breach of duty is shown, but the negligence of the trespasser prevents his recovery. If at the time he is struck, such person is not acting negligently, he can recover. Railway v. Sympkins, 54 Texas, 618; Artusy v. Railway Co., 195; Railway Co. v. Watkins, 29 S. W. Rep., 233.

But the principles declared in these cases do not authorize a recovery by one injured by the mere negligent running of the engine when at the time of the injury he is, without right to be there, in a situation where his mere presence is negligence, and such, we think, was appellant's situation when he was hurt. Rucker v. Railway Co., 61 Texas, 499; Beach on Cont. Neg., 163.

It is urged that the evidence tended to show gross negligence on the part of the engineer and that, hence, appellee, though wrongfully on the engine, would have the right to recover. As before shown, he would have the right to recover for ordinary negligence if his contributory negligence did not preclude him; and, if he was guilty of contributory negligence, the fact that the negligence of the company's servants was gross would not, under the rule in this State, alter the case. McDonald v. Railway Co., 86 Texas, 1.

When it is said in some authorities that persons on a conveyance without right to be there are entitled to recover for gross negligence on the part of those in charge of it, the negligence referred to consists of something done or omitted to the consequences of which the negligence of the injured party does not contribute. Some of the special charges requested by appellant, defining the duty of the railway company on the theory that appellant was not lawfully on the engine, but was there with the knowledge of the engineer, were abstractly correct so far as they defined that duty, but the fact, as we conceive it to conclusively appear from the evidence, that appellant was guilty of negligence contributing to his injury, precluded him from recovering on that theory, and hence there was no error in refusing them.

*Affirmed.*

Delivered November 21, 1895.
Writ of error refused.