Mabel VINICH, Administratrix of the Estate
of Kenneth G. Mitchell, Deceased,
Appellant (Plaintiff below),

v.

TETON CONSTRUCTION CO., Appellee
(Defendant below).

No. 4223.

Supreme Court of Wyoming.

Jan. 11, 1974.

As Modified on Denial of Rehearing
Feb. 13, 1974.

B. J. Baker, Brown, Drew, Apostolos, Barton & Massey, Casper, for appellant.

William S. Bon, Casper, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Mabel Vinich, Administratrix of the Estate of Kenneth G. Mitchell, Deceased, brought an action for wrongful death after Mitchell had been killed in a head-on collision between a truck and a 1955 Chevrolet station wagon. The station wagon was owned and driven by William J. Spangler.

He and Mitchell were members of a drilling crew which had been working on a drilling rig north of Gillette, Wyoming. The truck belonged to Teton Construction Company. It was being used in connection with a construction contract for road repairs on the portion of the roadway where the accident occurred. The accident took place approximately 3:30 in the afternoon on May 3, 1969, as the drilling crew was returning from the rig site to Gillette. The Spangler vehicle overtook a heavy oil field truck. The head-on collision occurred with Teton's truck when Spangler attempted to pass this oil field truck. The evidence indicates visibility was poor because of blowing dust.

Following trial to a jury, a verdict was returned for the defendant. The administratrix, being dissatisfied with the verdict, has appealed to our court.

■ Her *first assignment of error* is that the court erred when it allowed a motion in limine by Teton Construction Company. The motion, as allowed by the court, prohibited plaintiff from introducing any of the provisions of a certain construction contract. The construction contract was between Teton Construction Company and the Wyoming State Highway Department. It related to the portion of highway where the accident occurred.

In allowing the motion, the trial judge said "none of it [the contract] is admissible right now." He said the evidence should be introduced and if there were matters in the contract to be submitted to the jury it could be done in the instructions. In fact, as discussed later in this opinion, the court did instruct on the contract and quoted the portion of the contract dealing with dust control. In view of this ruling and later instruction, we cannot say granting of the motion in limine was prejudicial or reversible error.

The trial court in this case chose to follow the line of cases which hold that the contract specifications do not set a standard of care for, nor change the duty of, the contractor to the traveling public; but rather may be considered along with the other evidence in the case in determining what a reasonably prudent contractor would or would not have done under all the circumstances of the case.[1]

Since plaintiff-appellant did not object to Instruction 9, the law of the case, insofar as she is concerned, must be considered to be that expressed in such instruction. Joly v. Safeway Stores, Inc., Wyo., 502 P.2d 362, 365. Instruction 9 instructed the jury as follows:

"You are instructed that the highway construction contract between defendant, Teton Construction Co., and the State Highway Commission of Wyoming provided as follows:

" 'The traveled lanes shall be kept free of dust and when necessary, they shall be sprinkled with water or some other dust palliative shall be applied.'

"You are instructed that the terms and specifications of the contract between the defendant and the State Highway Commission of Wyoming do not set a standard of care for nor change the duty of the contractor to the traveling public; but you may consider such contract terms or specifications along with the other evidence in the case in determining what a reasonably prudent contractor would or would not have done under all the circumstances of the case."

■ Appellant's *second assignment of error* is that during the course of trial plaintiff offered certain exhibits for the purpose of showing the amount of water Teton Construction Company caused to be placed on the surface of the highway following the accident. These exhibits were

---

1. The correct rule pertaining to the matter of the reception of public contracts in evidence is well delineated in Larson v. Heintz Construction Co., 219 Or. 25, 345 P.2d 835, 849, where it is said that the contracts may come in as evidence of what is reasonable care, provided that the court should in the first instance construe the contract to determine what provisions should be brought to the attention of the jury.

rejected and the plaintiff claims that was error.

The general rule with respect to repairs and improvements made after an accident, as stated in 29 Am.Jur.2d, Evidence § 275, p. 323, is this:

"It is almost universally held that evidence of repairs, change of conditions, or precautions taken after an accident or injury, is not admissible as evidence or an admission of negligence before the accident."[2]

Plaintiff seeks to rely on the exception sometimes recognized that evidence of subsequent repairs, alterations, or precautions may be admissible in rebuttal or impeachment of a witness. In the instant case, however, we believe the court was justified in not departing from the general rule. Had such exhibits and the ensuing testimony thereon been permitted, it would necessarily have brought many collateral issues into the case to confuse the jury. Even if there was error in that regard, and we are not saying there was, it would appear to be quite harmless and its prejudicial effect not demonstrated. Moreover, appellant has cited no case authority for her contention.

■ The third error claimed by appellant is that the trial court failed to instruct with respect to concurring negligence. The instruction offered by appellant on this subject would have instructed that there can be more than one proximate cause of an injury when the negligence of two or more persons is concurrent; and that it is no defense if the negligent conduct of another person was also a proximate cause of the injury. Appellant correctly argues that without the guidance furnished by such an instruction, the jury could easily be confused on the matter of proximate cause.[3]

In this particular case, the jury is sure to have been confused on the matter of proximate cause because of an instruction which was given. This instruction undertook to define proximate cause and concluded with these words:

"This is a technical definition and the term proximate cause might more simply be defined as *the* real cause." [Emphasis supplied.]

Obviously, when the court undertook to say that proximate cause can be defined as "the" real cause, it eliminated entirely the possibility of concurring negligence and in effect said to the jury that there could be only one cause of an accident. This was prejudicial error to the extent that the case must be reversed and remanded for a new trial.

Reversed and remanded for new trial.

McCLINTOCK, Justice (concurring).

I agree with the majority that the case should be reversed and remanded for new trial. The failure of the trial court to instruct on the question of concurrent negligence is in my opinion sufficient to warrant this action. However, I am concerned that we are returning the case to the trial court for further proceedings without adequate determination of legal issues that are important to the retrial.

In support of her argument that the trial court erred in sustaining the motion *in limine* plaintiff strongly urges that the ruling upset the whole presentation of her case. Were this the only error occurring in the proceedings I might consider that it was nonprejudicial under the instruction given by the court calling attention to the contract provision relating to dust control. However, plaintiff contends not only that

2. See Morin v. Chicago and Northwestern Railway System, S.D., 209 N.W.2d 895, 897; Livingston v. Fuel, 245 Ark. 618, 433 S.W.2d 380, 381; Otis Elevator Company v. McLaney, Alaska, 406 P.2d 7, 15; Morrison v. City of Butte, 150 Mont. 106, 431 P.2d 79, 83–84; 64 A.L.R.2d, § 3(a), p. 1300, and 64 A.L.R.2d Later Case Service, § 3, p. 25.

3. Pigg v. Brockman, 85 Idaho 492, 381 P.2d 286, 291; Strickland v. Powell, 10 N.C.App. 225, 178 S.E.2d 136, 139; Caldwell v. St. Louis Public Service Company, Mo., 275 S.W. 2d 288, 293; Burd v. Bleisher, 208 App.Div. 499, 203 N.Y.S. 754, 756; 13 Blashfield, Automobile Law and Practice, § 463.26, p. 725 (1969).

that provision was pertinent but that she was also wrongly denied the right to call to the attention of the jury the provisions of the contract relating to the posting of warning signs and that the denial of her offer to prove that there were no signs located near the scene of the accident advising that trucks were entering the highway, was additionally prejudicial. It is argued that the absence of these signs had a material bearing upon the conduct of the driver of the car occupied by the decedent. I would hold admissible contract provisions relative both to dust control and the placing of warning signs, subject to such editing as the trial court might believe necessary in order to eliminate matters having no pertinence to any claim of plaintiff.

Plaintiff urges that the provisions of the contract are admissible as giving to plaintiff the right to base a tort action on the failure of the contractor to comply with the safety provisions in the construction contract, citing as her chief authority Hogan v. Hill (1958), 229 Ark. 758, 318 S.W. 2d 580. I do not think that we need go that far, particularly since I consider that plaintiff has not predicated her original complaint on the existence of such a right.

The complaint alleges that Teton

"was negligent in failing to maintain the highway through the construction zone in a condition in which it would be safe for use by members of the public who were expected to travel over and be upon the said highway in the construction zone." -

An additional allegation that Teton was creating a nuisance was subsequently withdrawn as shown in the pretrial order. We do not find in plaintiff's pretrial statement any indication that she relied upon the contract provisions as creating any special right in her as a member of the traveling public. The transcript of the argument on the motion *in limine* shows that plaintiff's counsel conceded that the contract provisions "do not establish that the defendant owes a duty to the plaintiff but they do establish what the duty owed to the plaintiff is." That the obligation of the road contractor is to exercise reasonable care to avoid injury to the traveling public was recognized by counsel, citing Brasel & Sims Construction Co. v. Neuman Transit Co. (Wyo.1963) 378 P.2d 501, that a "road contractor must exercise reasonable care to avoid injury to the traveling public and is governed by the ordinary rules of negligence". (Quotation as set forth in transcript of the proceedings.)

However, plaintiff also contends that the contract provisions were admissible on an evidentiary basis and cites substantial authority which I think sustains the admissibility of the contract provisions concerning safety precautions designed to protect the traveling public. As I read the record the contract provisions were offered in evidence upon the issue of the exercise of reasonable care by Teton. I agree with the majority that Larson v. Heintz Construction Co. (1959), 219 Or. 25, 345 P.2d 835, cited in the footnote of the majority opinion, sets forth the correct rule concerning admissibility, but it is said that the error, if any, in not admitting the contract provisions, is not prejudicial. I think that they should have been admitted, and that we should now so direct, particularly since the case is being remanded for new trial.

I take the view that *Larson* and other cases hereafter set forth hold that whether or not the contract safety provisions establish some third-party benefit for the traveling public, the precautions that the contractor undertook to take have some evidentiary bearing on whether he has acted in a reasonable way. Thus, in *Larson* it is said that "reasonableness depends upon the circumstances, and here the contract was a circumstance." In Metropolitan Paving Co. v. Puckett (10 Cir. 1963), 389 F.2d 1, 4, quoting with approval from Williams v. Tillett Brothers Construction Co. (6 Cir. 1963), 319 F.2d 300, it was said that while

the specifications did not set the standard of care which the jury might apply,

"the jury might look to the specifications along with all of the other evidence in determining what a reasonably prudent person would have done under like or similar circumstances."

In Davis v. Nelson-Deppe, Inc. (1967), 91 Idaho 463, 424 P.2d 733, the plaintiff had sought to amend his complaint to allege a claim based upon the theory that the contract between the state of Idaho and the contractor created a third-party right for plaintiff as a member of the traveling public, and he was therefore entitled to maintain an action for breach of those covenants. The Idaho court rejected this but held that the contract was admissible

"for the limited purpose of showing a circumstance which might be considered by the jury in determining the standard of care the defendant owed to the plaintiff."

I believe that the best discussion of the problem is set forth in Foster v. Herbison Construction Co. (1962), 263 Minn. 63, 115 N.W.2d 915, where the court avoided getting into the "peripheral area of rights acquired by the traveling public under such contract provisions", but said that such provisions were of evidentiary value in establishing what is due care. It was unnecessary to hold that persons injured as a result of the contractor's failure to do what he agreed would have any rights under the contract, but recognition by the contracting parties that certain acts should be done for the protection of the traveling public, followed by failure to perform such acts, does have bearing on the establishment of negligence.

(p. 919):

"The ultimate question still is: What would an ordinarily prudent person have done under the same or similar circumstances? * * * We think that, whatever the reasoning may be, the better rule, and that now followed by the weight of authority, is that such contract provisions should be admitted for the jury's consideration, together with all other evidence, in determining the question of defendant's negligence."

The Minnesota court specifically was attempting to avoid difficulties involved in applying contract and third-party beneficiary principles to negligence actions and further said (p. 919):

"* * * But, if we concede that the defendant already owes plaintiff the duty of exercising due care and the contract between the state and defendant is only one of the links in the chain of evidence to establish what that due care is, we avoid some of these difficulties. It is in this area of evidence that the contract should be admissible—not to establish that defendant owes a duty to plaintiff, but to help establish what the already existing duty is."

For these reasons I think that we should do more than merely indicate the possibility that the contract provisions might be admissible but that it was nonprejudicial error not to admit them. We should explicitly advise the trial court to that effect.

Plaintiff did not object to instruction 9. I would say that under her theory of the case the instruction was proper insofar as it went, but I think that the court, if it is convinced that there is evidence tending to show a failure to place warning signs near the road and that such failure may have had some bearing upon the accident, should include in the instruction the provisons of the contract requiring the placing of signs.

With respect to evidence concerning the use of water for dust control after the accident, I agree that such evidence would not be admissible as part of the plaintiff's case in chief. But in this situation we have Mr. Morrisey, the superintendent of the job, testifying positively that the use of water upon the road would have been ineffective and perhaps even harmful. This testimony of one familiar with road construction was undoubtedly effective with the jury, but the question that naturally occurs is why, if water is not a good palliative for dust control under the circum-

stances of this job, did the contractor use it almost immediately after the accident? I realize that there had been a storm and that conditions on May 3 may not have required or permitted use of water that day, whereas they did on May 4 or 5, but it seems to me that this is part of the question to be considered by the jury. Evidence of subsequent use of water for dust control, if properly limited to a reasonable time after the accident and strictly confined to cross-examination of the expert witness as bearing upon his testimony on direct examination, would have been helpful to the jury in determining what weight they should give to the testimony of this witness. I am therefore of the opinion that the offer of proof, although perhaps not as clear as it should have been, was good under the exception to the rule as set forth in 29 Am.Jur.2d, Evidence, § 275, p. 323, cited in the majority opinion, this exception being that "evidence of subsequent repairs, alterations, or precautions may be admissible in rebuttal or impeachment of a witness", *id.* p. 324.